# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF FLORIDA
# TALLAHASSEE DIVISION

GEORGE VAZQUEZ,

    Petitioner,

v.                                          CASE NO.  4:08cv359-RH/GRJ

SECRETARY, DEPT. OF
CORRECTIONS,

    Respondent.

_____/

## ORDER DENYING THE PETITION

The petitioner George Vasquez seeks a writ of habeas corpus under 28 U.S.C. § 2254 invalidating his state-court jury-trial conviction of child abuse and child neglect.  The case is before the court on the magistrate judge's report and recommendation, ECF No. 20, and the objections, ECF No. 23.  I have reviewed *de novo* the issues raised by the objections.

I

The petition raises a number of evidentiary issues that would carry considerable weight on a direct appeal.  The trial court admitted other-act evidence

offered by the state and excluded other-act evidence offered by the defense. The trial court admitted a recording of a telephone conversation in which Mr. Vazquez referred to an unrelated cocaine charge that was pending against him.

This is not, however, a direct appeal. This is a § 2254 proceeding governed by the substantial restrictions accurately described at some length in the report and recommendation.

The first restriction is the requirement to exhaust state judicial remedies. *See* 28 U.S.C. § 2254(b)(1)(A). Mr. Vazquez now characterizes these evidentiary claims as rooted in the United States Constitution, and at some point issues like these do indeed take on a federal constitutional dimension. But in state court Mr. Vazquez did not assert the claims under the Constitution—or even come close enough, as he now asserts. The report and recommendation correctly concludes that the claims must be dismissed for failure to exhaust state judicial remedies.

If not dismissed on this basis, the claims still would fail. Relief under § 2254 is available only when the state courts' rejection of a claim "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," *id.* § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *Id.* § 2254(d)(2). The state courts' rejection of Mr. Vazquez's evidentiary claims does not meet this standard.

II

Mr. Vazquez says the jury saw him in shackles and that his appellate attorney rendered ineffective assistance by failing to raise the issue on appeal.

It is settled that a defendant has a right not to be seen in shackles by the jury absent sufficient security concerns. *See*, *e.g.*, *Deck v. Missouri*, 544 U.S. 622, 626 (2005) ("The law has long forbidden routine use of visible shackles during the guilt phase; it permits a State to shackle a criminal defendant only in the presence of a special need."); *Illinois v. Allen*, 397 U.S. 337, 344 (1970) (stating that trying a shackled defendant "arouses a feeling that no person should be tried while shackled and gagged except as a last resort"); *Zygadlo v. Wainwright*, 720 F.2d 1221, 1223 (11th Cir. 1983) ("Many considerations dictate that the use of shackles to restrain a defendant at trial should rarely be employed as a security device.").

Here the defendant was not shackled during the one-day trial. But the jury did not reach a verdict that day, and the jurors were brought back into the courtroom before they were allowed to resume deliberations the next day. The reason, the judge said, was so that the attorneys and Mr. Vazquez could see that the jurors were all back. (Tr. 353.) The jurors were in the courtroom only very briefly—long enough for the judge to make comments that were reported in just seven lines of transcript.

The record includes not a hint that anything happened between the end of the first day and the beginning of the second that increased any security concerns. That the defendant could safely sit through the first day of trial without being shackled thus seems to indicate he could sit through a very brief appearance at the beginning of the next day.  And in any event, the record includes no evidence to the contrary.  As a matter of settled federal constitutional law, if the defendant was to be shackled, the burden was on the state to establish a basis for doing so.  The state did not carry the burden.  Moreover, whether or not there was a need to shackle, there plainly was no need to bring the jury back into the courtroom.

Mr. Vazquez's trial attorney raised the shackling issue before the jury was brought into the courtroom.  Her request, though, was only that the judge instruct the prosecutor not to stand as the jurors came and went; the attorney seemed to indicate that so long as Mr. Vazquez remained seated, the shackles would not be visible.  It was an imminently reasonable request.  Indeed, it is hard to understand how a prosecutor would not immediately acquiesce.  The choices were to remain seated or risk an obviously substantial constitutional claim of the kind now before this court.  An insistence on the right to stand under these circumstances brings to mind the old saw that the government always wins when justice is done.

The judge's response was equally difficult to understand.  The judge said the trial was over.  (Tr. 353.)  But the jury was still deliberating, so the risk of

prejudice from shackling obviously remained; indeed, the risk might have been at its zenith.  The judge said he thought everyone should always remain seated as jurors came and went.  But, he said, the state attorney insisted his prosecutors stand, and they continued to do it.  This, the judge said, was voluntary.  When defendants and defense attorneys stood, the judge said, it was also voluntary.  And so, the judge said, the attorneys could do as they pleased in this case.  (Tr. 352.)  The judge seemed to miss entirely the point of the objection: that the defendant was shackled and should not be seen that way by the jurors, nor should he have to show less respect than the prosecutor.

It is altogether understandable that prosecutors and all others stand as jurors enter and leave a courtroom.  This court's local rules require it, and it is the mandatory practice in most courts.  Standing underscores to the jury that what they are doing is important.  This judge's practice, in contrast, was not to require it.  As a matter of courtroom management, that was his prerogative.  Still, standing shows respect even when not mandatory; it is understandable that the state attorney insists on it.  Here, though, there was an entirely different problem.  An unnecessarily shackled Mr. Vazquez was sitting in the courtroom.  It was constitutionally required that the judge not allow the jurors to see Mr. Vazquez's shackles.  The prosecutor should have agreed to remain seated.  When the prosecutor did not agree, the judge should have ordered it.  This should have been easy.

But the issue in this § 2254 case is not whether the prosecutor should have remained seated. The issue is whether Mr. Vazquez received ineffective assistance when his appellate attorney chose not to raise the issue on direct appeal. As accurately set out in the report and recommendation, an ineffective-assistance claim can succeed only upon a showing both that the attorney rendered objectively unreasonable assistance and that the defendant suffered prejudice. *See Strickland v. Washington*, 466 U.S. 668, 687-88 (1984).

The appellate attorney was dealt this hand on this issue. The record established that Mr. Vazquez was shackled but that the shackles would not be visible to the jury if Mr. Vazquez remained seated. The judge said Mr. Vazquez did not need to stand. The record did not indicate whether he stood, but a reasonable inference was that he did not. Why would he stand? The only reason suggested by his trial attorney was that the defense did not want to seem less respectful of the jury than the prosecutor seemed. That is a worthy goal, but hardly one that would warrant allowing the jury to see Mr. Vazquez in shackles. In the absence of anything in the record suggesting Mr. Vazquez stood—and with the only logical inference that he did not—there was no reasonable prospect of prevailing on this issue on direct appeal. Failing to raise the issue was not objectively unreasonable, and doing so almost surely caused no prejudice.

Another way to approach the issue is this. Mr. Vazquez was given a choice to remain seated or, instead, to stand and let the jury see him in shackles. Absent a sufficient security issue, a defendant cannot be required to appear before the jury in shackles. This is so as a matter of clearly established federal law as determined by the Supreme Court. But no clearly established federal law entitles a defendant to stand as the jury enters and leaves the courtroom, at least absent any reason to believe the jury will infer he is shackled. And there is no reason to believe any jury—let alone this one—would be so shallow as to decide a case based on whether the prosecutor stood while the defendant did not. In short, requiring Mr. Vazquez to show the jury his shackles would have been unconstitutional. Giving Mr. Vazquez a choice to remain seated and thus keep his shackles hidden was not unconstitutional. Allowing the jury to see him sitting down—even while the prosecutor stood—was not unconstitutional. It was just bad practice.

Mr. Vazquez says that whether the jury saw him in shackles is a disputed factual issue on which he is entitled to an evidentiary hearing in this court. This is so, he says, because he was denied an evidentiary hearing in state court. But the issue here is whether Mr. Vazquez's attorney rendered ineffective assistance *on direct appeal*. On direct appeal, the issue would not have been whether Mr. Vazquez actually stood and the jury actually saw him in shackles. The issue would have been whether *the record showed* that he stood and the jury saw his shackles—

whether, on the record as it existed at that point, he was entitled to relief.  The answer is no.  And in any event, a reasonable attorney could decide not to raise this issue on direct appeal because the record did not support the claim and there were other issues—including the evidentiary issues referred to in section I of this order—that could be pursued with a better chance of success.

### III

One of the defense theories was that injuries to the child at issue—the child that Mr. Vazquez was accused of abusing and neglecting—were caused not by Mr. Vazquez but by someone at the child's day-care center.  Mr. Vazquez's attorney learned during the trial that a juror had been seen waving to—and perhaps further communicating with—the owner of the day-care center.  (Tr. 149-53.)  The attorney advised the judge, who inquired of the juror on the record and allowed the attorneys to inquire as well.  *Id*.  The juror said she knew the owner.  (Tr. 154.)  And the juror said she had been sending her child to the day-care center for three months.  *Id*.  The juror said she could nonetheless be fair.  *Id*.  The judge decided to keep the juror but to make her the alternate.  (Tr. 155.)  Mr. Vazquez's attorney asked the judge to instruct the jurors not to discuss the case until the trial was over and they retired to deliberate, but the judge noted that he had already so instructed the jury, and he declined to give the instruction again.  (Tr. 156.)  The judge had indeed already so instructed the jury.  (Tr. 89.)

Mr. Vazquez now claims that his trial attorney rendered ineffective assistance by failing to request that that the juror be excused during the trial.

Whether this claim should be rejected without an evidentiary hearing is a close question. The juror posed a risk of bias in favor of the state, despite the statement that she could be fair. Indeed, the judge said that had the information been known during jury selection, the juror probably would have been excused for cause. (Tr. 155.) But the juror did not deliberate; she was the alternate and thus was excused when the other jurors began deliberations. Mr. Vazquez has proffered no evidence—and has suggested no reason to believe—that the jurors disregarded the instruction not to discuss the case during the trial. Mr. Vazquez has proffered no evidence—and has suggested no reason to believe—that this juror's presence during the remainder of the trial as an alternate made any difference.

In addition, there are offsetting factors that a reasonable trial attorney would consider before asking that this juror be excused. Trials do not always go well for the state; sometimes they go well for the defense. Going bare—proceeding without an alternate—creates a risk that a juror will be unable to continue and a mistrial will result. If the trial has gone well for the defense, a mistrial can be a bad development—sometimes the difference between winning and losing the case. An evidentiary hearing might cast light on why this attorney did what she did, but

it would not change the fact that an objectively reasonable attorney could choose not to object to the judge's approach.

IV

Mr. Vazquez asserts his trial attorney rendered ineffective assistance by failing to request that the jury be polled after it returned its verdict. The law of the circuit has long been settled that in the absence of a reason to believe the jury was uncertain of its verdict, the failure to request a poll is not ineffective assistance:

> Costa argues that his counsel's failure to poll the jury amounted to ineffective assistance. Since there is nothing in the record to indicate any juror was uncertain of the verdict, counsel's failure to request a poll does not fall outside the range of competence expected of attorneys in criminal cases. *See United States v. Gerardi*, 586 F.2d 896 (1st Cir. 1978).

*United States v. Costa*, 691 F.2d 1358, 1363-64 (11th Cir. 1982). The report and recommendation concludes that this claim was not exhausted, but whether that is so does not matter. The claim fails on the merits.

V

Finally, Mr. Vazquez contends that he was sentenced as an habitual offender based on facts found by the judge instead of the jury and that this violated his rights under the Sixth Amendment.

The Supreme Court has held that under the Sixth Amendment, a fact—other than a prior conviction—that increases a statutory maximum sentence must be admitted by a defendant, proved to a jury beyond a reasonable doubt, or so proved

to a judge if the defendant waives a jury trial on the issue.  *See, e.g., United States v. Booker*, 543 U.S. 220 (2005); *Blakely v. Washington*, 542 U.S. 296 (2004); *Apprendi v. New Jersey*, 530 U.S. 466 (2000).  But under Supreme Court decisions that have not been overruled, this principle does not apply to a fact that merely increases a statutory minimum sentence, not a statutory maximum, *see Harris v. United States*, 536 U.S. 545, 555-56 (2002), nor to the fact of a prior conviction, *see Almendarez-Torres v. United States*, 523 U.S. 224, 243-44 (1998).

Whether the Supreme Court would adhere to these exceptions today is less than clear.  Indeed, at one point five justices had expressed their disagreement with *Almendarez-Torres*.  *See Almendarez-Torres*, 523 U.S. at 248 (Scalia, J., dissenting for four justices not including Justice Thomas); *Apprendi*, 530 U.S. at 519-22 (Thomas, J., concurring) (receding from the decision to join the *Almendarez-Torres* majority).  But the uncertainty about the continuing validity of these decisions does not help Mr. Vazquez, at least in this court.  The state courts' rejection of his position was not "contrary to, or [based on] an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1).  To the contrary, the rejection of Mr. Vazquez's position was consistent with and indeed mandated by Supreme Court decisions that have not been overruled.

It bears noting, too, that while a jury right and the burden of proof on a factual dispute about prior convictions will sometimes make a difference—it is sometimes unclear in an immigration case, for example, whether the defendant is indeed the same person who was convicted in a prior case—there is no reason to believe it would have made any difference here.  Mr. Vazquez has proffered nothing that suggests that it would serve any purpose to now require the state to prove to a jury that Mr. Vazquez was indeed previously convicted as the state asserts.

Mr. Vazquez is not entitled to relief on this claim.

## VI

A district court must "issue or deny a certificate of appealability when it enters a final order adverse to" a § 2254 petitioner.  Rule 11(a) of the Rules Governing § 2254 Cases in the U.S. Dist. Ct..  A certificate of appealability may be issued only if a petitioner "has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  *See Miller-El v. Cockrell*, 537 U.S. 322, 335-38, 123 S. Ct. 1029, 154 L. Ed. 2d 931 (2003) (explaining the meaning of this term); *Slack v. McDaniel*, 529 U.S. 473, 483-84, 120 S. Ct. 1595, 146 L. Ed. 2d 542 (2000) (same); *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4, 103 S. Ct. 3383, 77 L. Ed. 2d 1090 (1983); *see also Williams v. Taylor*, 529 U.S. 362, 402-13, 120

S. Ct. 1495, 146 L. Ed. 2d 389 (2000) (setting out the standards applicable to a § 2254 petition on the merits).  As the Court said in *Slack*:

> To obtain a COA under § 2253(c), a habeas prisoner must make a substantial showing of the denial of a constitutional right, a demonstration that, under *Barefoot*, includes showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were "adequate to deserve encouragement to proceed further."

*Slack*, 529 U.S. at 483-84, *quoting Barefoot*, 463 U.S. at 893 n.4.  Further, in order to obtain a certificate of appealability when dismissal is based on procedural grounds, a petitioner must show, "at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling."  *Id.* at 484.

Mr. Vazquez has made the required showing on the issues set out below.

## VII

For these reasons,

IT IS ORDERED:

1. The clerk must enter judgment stating, "The petition is DENIED with prejudice."

2. A certificate of appealability is entered on these issues:

(a) Whether Mr. Vazquez adequately exhausted his constitutional claims arising from (i) the admission of the state's other-act evidence, (ii) the admission of evidence of a pending unrelated charge against Mr. Vazquez, and (iii) the exclusion of Mr. Vazquez's other-act evidence; and, if Mr. Vazquez did properly exhausted these claims, whether he is entitled to relief on them;

(b) Whether Mr. Vazquez's shackling claim was properly denied without a federal evidentiary hearing; and

(c) Whether Mr. Vazquez is entitled to relief on the claim that his trial attorney rendered ineffective assistance when she failed to request during the trial the exclusion of the juror who knew and did business with a prosecution witness.

The clerk must close the file.

SO ORDERED on September 21, 2011.

<u>Robert L. Hinkle</u>
United States District Judge